# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| STERLING TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-00476 |
| ) | Judge Aleta A. Trauger |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

United Parcel Service, Inc. ("UPS") has filed a Motion to Dismiss (Docket No. 6), to which Sterling Turner has file a Response (Docket No. 12), and UPS has filed a Reply (Docket No. 14). For the reasons set out herein, that motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Turner, who is African-American, was a "feeder driver" for UPS in La Vergne, Tennessee, until December 29, 2017, when he was terminated after having a "roll away accident."[2] (Docket No. 1-2 ¶¶ 1, 7–9.) Prior to the accident, Turner had "satisfactorily performed his job duties" at all times. (*Id.* ¶ 8.) According to Turner, "[o]ther similarly situated individuals of a different race were not terminated for roll away accidents." (*Id.* ¶ 10.) He also claims that he "was harassed and discriminated against by [UPS], th[r]ough [its] various officers, administrators, employees, and

---

[1] Except where otherwise indicated, the facts set forth are taken from Turner's Complaint (Docket No. 1-2) and are accepted as true for the purposes of the Motion to Dismiss.

[2] A "roll away accident," as far as the court can tell, is an accident involving a vehicle that has begun rolling without a driver—for example, because the parking brake was disengaged on a hill or the vehicle was accidentally left in gear when the driver stepped out. *See Nester v. Textron, Inc.*, 888 F.3d 151, 154, 162 (5th Cir. 2018); *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2010 WL 3491000, at *1 (N.D. Cal. Sept. 2, 2010).

agents, during [his] employment because of [his] race." He does not describe that harassment and states that his termination was retaliatory, although he does not explain what the retaliation would have been for. (*Id.* ¶¶ 13–14.)

Turner filed a charge with the EEOC, and the EEOC later issued him a right to sue letter. (*Id.* ¶¶ 4–5.) On April 26, 2019, Turner filed a short Complaint against UPS in Rutherford County Circuit Court. It pleads four counts: Count I is for wrongful termination and/or retaliation in violation of the Tennessee Human Rights Act ("THRA"); Count II is for intentional infliction of emotional distress; Count III is for negligent infliction of emotional distress; and Count IV is for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. (*Id.* ¶¶ 11–33.) UPS removed the case to this court, claiming jurisdiction based on Turner's federal claim and the diversity of the parties. (Docket No. 1 ¶¶ 8–10.)

UPS filed a Motion to Dismiss, arguing that Turner failed to state a claim with regard to any of his counts and that his THRA and common law causes of action were time-barred. (Docket No. 6 at 1.) In his Response and an accompanying Memorandum, Turner concedes that his THRA and common law causes of action are time-barred. (Docket No. 12 at 1.) Although he does not expressly concede his claim for retaliation, he advances no argument that he has pleaded the necessary elements of such a claim, mentioning retaliation only once in his Response Memorandum, when summarizing his Complaint. (Docket No. 13 at 1.) A few weeks after Turner filed his Response, his counsel moved to withdraw on the ground that the Tennessee Supreme Court had issued an Order of Temporary Suspension forbidding him from the practice of law. (Docket No. 17 at 1.) The court granted the motion (Docket No. 18) but will proceed to rule on this motion, which was fully briefed before plaintiff's counsel had to withdraw.

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept [his] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## III. ANALYSIS

Because Turner has conceded Counts I through III, all that remains for the court to consider is Count IV, his Title VII claim. Moreover, even if Turner had not effectively conceded his retaliation claim, that claim would warrant dismissal, because he has not alleged that he engaged

in any protected activity prior to his termination on which retaliation could have been premised. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). The court, therefore, must consider only whether he has alleged facts sufficient to support a claim for race discrimination under Title VII.

UPS argues that Turner's allegations regarding the alleged discrimination are conclusory and insufficient to establish a plausible basis for relief. Turner has alleged that, prior to his accident, his job performance was satisfactory, that he was fired following the accident, and that other, unidentified non-African-American UPS employees had similar accidents but were not fired. UPS likens Turner's allegations to those at issue in two Sixth Circuit cases, *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013) ("*16630 Southfield*"), and *Han v. Univ. of Dayton*, 541 F. App'x 622 (6th Cir. 2013), in which the court affirmed the dismissal of discrimination claims based on the fact that their allegations were merely conclusory.[3]

In *16630 Southfield*, the plaintiffs had filed suit under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, alleging that the defendant bank had discriminated against them on the basis of national origin (Iraqi) in its handling of their debt. *Id.* at 503. The plaintiffs alleged, "upon information and belief," that the bank had treated unidentified non-Iraqi borrowers more favorably in certain specific ways. *Id.* at 506. The Sixth Circuit wrote:

> These are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency. No doubt disparate treatment of similarly situated people may support an inference of discrimination. But the plaintiffs have not identified any similarly situated individuals whom Flagstar treated better. They have merely alleged their "belief"

---

[3] UPS also compares this case to a district court case, *Coleman v. JPMorgan Chase Bank, N.A.*, No. 3:17-CV-00741-GNS-CHL, 2018 WL 6183285, at *1 (W.D. Ky. Nov. 27, 2018), but it concedes, in its Reply, "that the pleading deficiency involved [in that case] was more severe than presented here." (Docket No. 14 at 5.)

4

> that such people exist. These naked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint.

*Id.* (citations and internal quotation marks omitted). Turner, like the plaintiffs in *16630 Southfield*, has failed to identify specific comparator individuals by name. However, as an employee discussing the treatment of other employees, his claim to knowledge of differential treatment is inherently more plausible than a debtor's mere belief that certain other debtors were treated more favorably. Moreover, the differential treatment that Turner is alleging is significantly more simple and straightforward than that alleged in *16630 Southfield*. For example, the *16630 Southfield* plaintiffs alleged, "upon information and belief," that the defendant bank "ha[d] refinanced 'non-Iraqi' borrowers 'where the debt to equity ratio [was] significantly less than exist[ed] regarding'" the plaintiffs. *Id.* Turner is not relying on unexplained information and belief to make allegations about something as complex and potentially private or semi-private as someone's debt-to-equity ratio. He is claiming that he, as an employee, was aware that other employees had had roll away accidents without being fired. His statement to that effect is short and simple, but that is because the fact is short and simple.

In *Han*, the plaintiff—a male, Asian-American untenured professor—alleged sex and race discrimination after he was given a bad evaluation by his employer's Promotion, Retention and Tenure ("PRT") Committee, causing his contract not to be renewed. 541 F. App'x at 624–25. The court described his comparator allegations as follows:

> Plaintiff alleges that a white male was hired as an adjunct professor to teach one of his patent law classes after his contract was not renewed. However, hiring an adjunct to teach one class is not a replacement hire for a tenure-track professor teaching several classes. Plaintiff also makes several allegations regarding how he was treated by the PRT committee. His allegations regarding how this treatment constitutes an indication of being treated less favorably than a similarly situated non-male, non-Asian-American fail to provide the kind of specific facts necessary to make his discrimination claims plausible.

> This Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint. Further, Plaintiff's allegation of gender discrimination is especially weak given the fact that there were both men and women on the PRT committee and he was eventually replaced in one of his classes by a male. Plaintiff concludes that he was treated less-favorably than non-Asian-American employees and was treated less-favorably than other similarly-situated female employees, but he has offered no specifics regarding who those employees were or how they were treated differently.

*Id.* at 627 (citations omitted). Turner, though, is not merely inferring that he was treated differently than other, non-African-American employees based on the same conduct; he is explicitly alleging, as a factual matter, that that was the case, and he has described how the treatment was different. Neither *Han* nor *16630 Southfield*, therefore, is wholly analogous to Turner's case.

There is no categorical requirement that a plaintiff who seeks to support an inference of discrimination must identify similarly situated comparator employees by name in his complaint. *See, e.g., Baker v. Hafez Corp.*, No. CIV.A. 13-00641-KD-N, 2014 WL 1760976, at *9 n.13 (S.D. Ala. May 2, 2014) ("[A] failure to identify specific comparators in a complaint does not necessarily mean [a Title VII complaint] should be dismissed."); *Ledesma v. Highlands Wood Golf & Country Club, Inc.*, No. 2:11-CV-359-UA-DNF, 2012 WL 1093643, at *4 (M.D. Fla. Apr. 2, 2012) ("At this stage of the litigation, Plaintiffs need not identify these similarly-situated employees by name. Such information is more appropriately revealed during discovery."). However, the need to establish a "plausible inference of discrimination," *16630 Southfield*, 727 F.3d at 504, will typically require at least some degree of detail regarding any comparator employees on which a plaintiff relies, in order for the court to evaluate whether such an inference can be drawn. Turner's allegations certainly could have gone further in that regard. Nevertheless, given the nature of the conduct at issue, the court can at least infer that the other, non-African-American employees that Turner references were, like Turner, drivers, since they too had roll-away accidents. Turner also wisely bases his comparison on roll away accidents in particular, not merely any automobile

collisions while on the job. Turner alleges that he had a roll away accident and was promptly fired, while non-African-American drivers who had the same type of accident were not. Identifying similarly situated employees who were disciplined less severely for the same conduct is a well-settled mechanism for supporting an inference of discrimination. *See Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 527 (6th Cir. 2018) (discussing the use of similarly situated employees in cases involving disciplinary action). Although Turner's Complaint tests the limits of what is sufficient under Rule 8 of the Rules of Civil Procedure, the court cannot conclude that it should be dismissed.[4] The court, therefore, will deny the Rule 12(b)(6) motion with regard to the discrimination claim in Count IV. The court cautions Turner, however, that this issue was close, and the bar for maintaining his claims will only get higher as the case progresses. He is strongly encouraged to obtain counsel.

## IV. CONCLUSION

For the foregoing reasons, UPS's Motion to Dismiss (Docket No. 6) is hereby **GRANTED** in part and **DENIED** in part. Turner's Counts I, II, and III are **DISMISSED**. Count IV is **DISMISSED** only in part, insofar as it alleges retaliation. Turner's discrimination claim under Count IV shall remain pending. The initial case management conference originally scheduled for August 13, 2019, is reset for November 25, 2019 at 2:00.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

---

[4] In contrast, Turner's use of unidentified comparator employees would likely be insufficient, as an evidentiary matter, to support a *prima facie* case of discrimination. However, the Sixth Circuit has made clear that a district court should not import those standards into the Rule 12(b)(6) context. *See, e.g.*, *Primm v. Dep't of Human Servs.*, No. 16-6837, 2017 WL 10646487, at *2 (6th Cir. Aug. 17, 2017) (explaining that a plaintiff is not required to plead a *prima facie* case of discrimination in order to avoid dismissal of his complaint).